UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JENNIFER SKYLES,

        Plaintiff,

v.                                      Case No. 6:16-cv-1968-Orl-37TBS

MICHAEL J. McCOY; MATTHEW
FOWLER; and THE CITY OF
ALTAMONTE SPRINGS,

        Defendants.
_____

## ORDER

In the instant civil rights action, Defendant City of Altamonte Springs moves to dismiss several counts of Plaintiff's complaint. (Doc. 5.) Plaintiff responded on December 23, 2016. (Doc. 13.) For the reasons set forth below, the Court finds that the motion is due to be granted in part and denied in part.

### I.    BACKGROUND[1]

Plaintiff Jennifer Skyles ("**Plaintiff**") initiated this action on behalf of her deceased husband, Anthony Skyles ("**Decedent**"), who was shot and killed by a member of the Altamonte Springs Police Department ("**the ASPD**") on June 15, 2014 ("**Shooting**"). (Doc. 3, ¶¶ 2, 8.)

On the date in question, Plaintiff called the Seminole County Fire Department for

---

[1] The following facts are taken from the Complaint (Doc. 3), taken as true, and construed in the light most favorable to Plaintiff, the non-moving party. *See Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

assistance hospitalizing Decedent, who was exhibiting suicidal behavior and holding a knife to his throat. (*Id.* ¶ 18.) The Seminole County Fire Department responded by placing a call to the ASPD; in turn, the ASPD dispatched Officer Matthew Fowler ("**Officer Fowler**") to the Skyles residence ("**Residence**"). (*Id.* ¶¶ 19–20, 22.) According to Plaintiff, this was not the first time that the ASPD had been called to the Residence; thus, the ASPD should have been aware that Decedent "suffered from a mental condition and had been previously released from a mental hospital facility." (*Id.* ¶ 20.)

But despite such history, upon his arrival, Officer Fowler approached the doorway "with his gun pulled and pointed at [Decedent]." (*Id.* ¶ 22.) Although Decedent's mental condition was "clear," and he "had not committed a crime or offense[,] nor was he engaged in or planning to commit a crime," Officer Fowler kept his gun pointed at Decedent. (*Id.* ¶¶ 23, 24.)

Skyles then informed Officer Fowler that he had a pocket knife and intended to place it on the table. (*Id.* ¶ 26.) At this time, Officer Fowler began shooting at Decedent, firing six shots, four of which struck Decedent. (*Id.* ¶¶ 26, 27.) Skyles was ultimately pronounced dead at the scene. (*Id.* ¶ 28.)

Based on the foregoing, Plaintiff asserts: (1) a claim against Officer Fowler under 42 U.S.C. § 1983 for unreasonable seizure ("**Count I**"); (2) § 1983 claims for excessive force against Officer Fowler ("**Count II**") and ASPD Chief of Police Michael McCoy ("**Chief McCoy**") ("**Count VI**"); (3) state law claims for wrongful death against the City of Altamonte Springs ("**the City**") ("**Count III**") and Officer Fowler ("**Count IV**"); (4) state

2

law claims for assault and battery against the City ("**Count V**"); and (5) state law claims for negligent hiring, retention, and supervision against the City ("**Count VII**") and Chief McCoy ("**Count VIII**"). (Doc. 3.) Pursuant to Federal Rule of Civil Procedure 12(b)(6), the City moves to dismiss all counts asserted against it and Chief McCoy. (Doc. 5.) Plaintiff responded (Doc. 13), and the matter is ripe for adjudication.

## II. STANDARDS

### A. 12(b)(6) Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) provides that a claimant must plead "a short and plain statement of the claim." On a motion to dismiss under Rule 12(b)(6), the Court limits its consideration to the "well-pleaded factual allegations." *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The factual allegations in the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this plausibility determination, the Court must accept the factual allegations as true; however, this "tenet . . . is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678 (2009). A pleading that offers mere "labels and conclusions" is therefore insufficient. *Twombly*, 550 U.S. at 555.

### B. 42 U.S.C. § 1983

Section 1983 provides aggrieved persons with a procedural mechanism to seek redress for constitutional violations that are committed while a defendant is acting under color of state law. Acts performed by law enforcement officers—even if illegal or unauthorized—are considered to have been performed under color of state law so long

as the acts are done in the defendant's capacity as a law enforcement officer. *See West v. Atkins*, 487 U.S. 42, 49–50 (1988). However, a § 1983 claim will fail if the plaintiff does not properly allege a constitutional violation. *See Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 119 (1992) ("Although [§ 1983] provides the citizen with an effective remedy against those abuses of state power that violate federal law, it does not provide a remedy for abuses that do not violate federal law.").

### III.   ANALYSIS

#### A.   Statute of Limitations

As an initial matter, the City argues that Plaintiff's claims are barred by the applicable statute of limitations ("**SOL**"). (Doc. 5, pp. 3–5.) Not so.

State law dictates the SOL governing a § 1983 claim. *Penoyer v. Briggs*, 206 F. App'x 962, 964 (11th Cir. 2006). Under Florida law, "a cause of action for wrongful death accrues on the date of death," *Fulton Cty. Adm'r v. Sullivan*, 753 So. 2d 549, 552 (Fla. 1999), and must be brought "against a state or one of its agencies or subdivisions" within two years after the claim accrues, Fla. Stat. §§ 768.28(14), § 95.11(4)(d).[2]

But before an individual may institute a wrongful death action against a municipality, the claimant must present a claim to the appropriate agency and receive a written denial.[3] Fla. Stat. § 768.28(6)(a). Although these requirements are conditions

---

[2] For purposes of § 768.28, a municipality is a state agency. Fla. Stat. § 768.28(2).
[3] Claimants proceeding against municipalities are excepted from the additional requirement of presenting the claim to the Department of Financial Services ("**DFS**"). Fla. Stat. § 768.28(6)(a).

precedent to maintaining a wrongful death action against a state agency, they do not affect the date on which the cause of action accrues. Fla. Stat. § 768.28(6)(a)(2)(b). Rather, the SOL is tolled for the period of time taken by the appropriate agency to deny the claim. Fla. Stat. § 768.28(6)(a)(2)(d). In wrongful death actions, the failure of the agency to make a final disposition of a claim within ninety days is deemed a denial. *Id.*

In light of such tolling, the Court finds that the instant action is not barred by the SOL. Though Decedent's death occurred on June 15, 2014 (Doc. 3, ¶ 2), Plaintiff sent the Florida League of Cities ("**the City Agency**") a "notice of intent to sue" on July 21, 2014 ("**Filing Date**") (Doc. 13, p. 7).[4] Therefore, the SOL was tolled until the City Agency denied her claim, unless such time exceeded ninety days.

Ultimately, the City Agency denied Plaintiff's claim on May 11, 2015.[5] (*Id.* at 10.) Because this disposition did not occur within ninety days of the Filing Date, Plaintiff's

---

[4] In resolving motions to dismiss, courts generally limit their consideration to the face of the complaint, its attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." S*ee Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016). Courts may also consider an extrinsic document if it is central to plaintiff's claim and its authenticity is not challenged. *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010). Here, the Complaint states that Plaintiff has "satisfied all conditions precedent to filing this lawsuit, including those imposed by Florida Statutes § 768.28." (Doc. 3, ¶ 16.) Given that such conditions include the submission of a claim to the appropriate state agency and the resultant effect on the SOL, the Court has considered the documents attached to Plaintiff's response regarding the same, as such documents were submitted to the City Agency and are not in dispute.

[5] Though not required to do so, Plaintiff also submitted a claim to DFS. (Doc. 13, p. 7.) On August 6, 2014, DFS replied to Plaintiff's notice, stating that it had no financial interest in the claim and that "it is [was] not necessary to notify [DFS] regarding a claim against a city or municipal entity." (*Id.* at 9.)

claim was deemed denied on October 20, 2014, at which point the SOL began to run again.

On the whole, the SOL ran from June 15, 2014, until September 14, 2016.[6] Plaintiff filed the instant action on July 20, 2016—well within the SOL period. As such, the Court rejects the City's first ground for dismissal.

### B. Battery and Negligent Hiring Claims

While not a model of clarity, sandwiched within the City's SOL argument is a reference to the prohibition under Florida law against personal injury actions that result in death. (Doc. 5, p. 4.) The Court construes such reference as an argument seeking to dismiss Plaintiff's state law claims for: (1) assault and battery in Count V ("**Battery Claim**"); and (2) negligent hiring, retention, and supervision in Counts VII and VIII ("**Negligent Hiring Claims**"). Upon consideration, the Court finds that Plaintiff must replead these causes of action as wrongful death claims, albeit under different theories of liability.

Importantly, "Florida's survival statute preserves the right to bring personal injury actions [that] [a] decedent may have brought prior to his death only when the personal injury was not the cause of death." *Cone v. Orosa*, No. 13-cv-24674-JLK, 2014 WL 1383028, at *2 (S.D. Fla. Apr. 8, 2014); *see also* Fla. Stat. § 46.021 ("**Survival Statute**"). This is so

---

[6] The SOL ran for thirty-six days between June 15, 2014, and July 21, 2014, when it was tolled for ninety days until October 20, 2014. Because 2016 was a leap year, there were 731 days in the SOL period (365 + 366 = 731). Hence as of October 20, 2014, there were 695 days remaining in the SOL period (731 - 36 = 695). So the SOL ran until September 14, 2016 (October 20, 2014 + 695 days).

because, under Florida's Wrongful Death Act,[7] "an action for personal injuries resulting in death, previously maintainable by a decedent's personal representative under the [S]urvival [S]tatute, now abates, and the personal representative must instead file a wrongful death action." *Starling v. R.J. Reynolds Tobacco Co.*, 845 F. Supp. 2d 1215, 1218 (M.D. Fla. 2011); *see also* Fla. Stat. § 768.20 ("When a personal injury to the decedent results in death, no action for the personal injury shall survive, and any such action pending at the time of death shall abate.").

Applying these principles to the instant action, it is indisputable that Plaintiff has alleged that Decedent's injuries resulted in death. (*See generally* Doc. 3.) Because she has already asserted a wrongful death claim against the City for ordinary negligence on a theory of vicarious liability (*see* Doc. 3, ¶¶ 49–55), if Plaintiff choses to pursue her Battery and Negligent Hiring Claims, she must replead them as wrongful death claims premised on a theory of liability distinct from simple negligence.[8] But in their current form, these claims are due to be dismissed.

---

[7] Florida's Wrongful Death Act constitutes §§ 768.16 through 768.26 of the Florida Statues. Fla. Stat. § 768.16.

[8] *See Christie v. Lee Cty. Sheriff's Office*, No. 2:10-cv-420-FtM-36DNF, 2011 WL 4501953, at *6 (Sept. 28, 2011) (permitting the plaintiff's negligence claims to proceed as "wrongful death actions premised on different theories of liability, *i.e.*, medical negligence, negligent hiring, etc."); *see also Estate of Faull v. McAfee*, 6:13-cv-1746-Orl-31KRS, 2015 WL 6125309, at *4 (M.D. Fla. Oct. 16, 2015), *Cone*, 2014 WL 1383028, at *3 (concluding that the plaintiff's "battery and negligence claims [were] wrongful death actions premised on different theories of tort liability" that "[could not] stand as independent causes of action"), *Shehada v. Tavss*, 965 F. Supp. 2d 1358, 1378 (S.D. Fla. 2013) (finding that the plaintiff could not sustain any independent battery claim on behalf of the decedent).

### C. Remaining Wrongful Death Claims

The City also argues that any surviving wrongful death claims should be dismissed due to Plaintiff's failure to identify all Decedent's beneficiaries. (*See* Doc. 5, p. 6.) Indeed, § 768.21 of the Florida Statutes requires that a complaint identify "[a]ll potential beneficiaries of a recovery for wrongful death, including the decedent's estate," and allege their relationships to the decedent. Here, the caption of the Complaint identifies Plaintiff "as Personal Representative of her deceased spouse." (Doc. 3, p. 1.) Additionally, the Complaint states that Plaintiff "is the spouse of the decedent" and that "[s]he is, or will be, appointed the Personal Representative of [Decedent's] Estate." (*Id.* ¶ 8.) Standing alone, the Court is unable to deduce whether such statements satisfy the requirements of the Wrongful Death Act, and so, the Court will grant Plaintiff leave to amend her Complaint to either: (1) identify all potential beneficiaries; or (2) affirmatively state that Plaintiff is the only potential beneficiary.

### D. State Law Claims Against Chief McCoy in his Individual Capacity

Next, to the extent that Plaintiff intends to assert state law claims against Chief McCoy in his individual capacity,[9] the City argues that those claims are barred by statutory immunity under § 768.28 of the Florida Statutes. (*Id.* at 6.)

Provided they have not "acted in bad faith or with malicious purpose or in a

---

[9] This lack of clarity is caused by two conflicting statements in the Complaint. On one hand, the opening paragraph of the Complaint states that Plaintiff is suing Chief McCoy "in his official capacity as Chief of Police of [ASPD]." (Doc. 3, p. 1.) Yet, in paragraph 14 of the Complaint, Plaintiff states that the individual Defendants "are sued individually and in their official capacity." (*Id.* ¶ 14.)

8

manner exhibiting wanton and willful disregard of human rights, safety, or property," § 768.28 immunizes state law enforcement officers from individual liability in civil suits—specifically, for tortious acts committed within the scope of their employment. Fla. Stat. § 768.28(9)(a). Bad faith under § 768.28(9)(a) has been characterized as conduct acted out with actual malice. *Drudge v. City of Kissimmee,* 581 F. Supp. 2d 1176, 1194–95 (M.D. Fla. 2008).

The only state law claim asserted against Chief McCoy is a Negligent Hiring Claim in Count VIII. (Doc. 3, ¶¶ 78–88.) In support, Plaintiff alleges that: (1) Officer Fowler has had multiple complaints, infractions, or reports of misconduct filed against him in the past; (2) as a result, Chief McCoy should have known that Officer Fowler was violating the law and the ASPD's policies and procedures; (3) Chief McCoy neither remedied the situation, nor did he discharge, further supervise, or retrain Officer Fowler; (4) it was foreseeable that a member of the public would be killed; and (5) Chief McCoy's supervision, hiring, and retention of Officer Fowler constituted negligence or gross negligence. (*Id.* ¶¶ 80–87.) The Court has determined that Plaintiff must replead this count as a wrongful death claim. Should it be reasserted, the allegations would need to assert with particularity facts sufficient to demonstrate wanton and willful disregard of human safety. Allegations of simple negligence or even gross negligence are not sufficient to avoid the immunity afforded by Florida Statutes, § 768.28(9)(a). *See McClelland v. Cool*, 547 So. 2d. 975 (Fla. 2d DCA 1989).

### E. Section 1983 Claim Against Chief McCoy for Excessive Force

In Count VI, Plaintiff alleges that:

> [t]he conduct and actions of [Chief McCoy], acting under color of law, in authorizing, directing, training, and/or otherwise failing to promulgate reasonable policies and procedures among his officers for the use of force was excessive and unreasonable, was done intentionally, willfully, maliciously with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of his acts, was done without lawful justification or reason, and was designed to and did cause specific and serious physical emotional pain, physical pain, and death in violation of [Decedent's] rights under 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments to the Constitution, including the right to be free from unreasonable seizure and the right to be free from the use of excessive, unreasonable, and unjustified force.

(Doc. 3, ¶ 70.) In its motion to dismiss, the City argues that Count VI fails to state a claim against Chief McCoy in both his individual and official capacities. (Doc. 5, pp. 7–9.) The Court agrees.

#### 1. Individual Capacity Claim

To bring a § 1983 claim against Chief McCoy in his individual capacity, Plaintiff must allege more than vicarious liability. Indeed, "[i]t is well established that § 1983 claims may not be brought against supervisory officials on the basis of vicarious liability or respondeat superior." *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (citing *Belcher v. City of Foley,* 30 F.3d 1390, 1396 (11th Cir. 1994)). However, supervisors can be found liable under § 1983 "either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of

10

the supervising official and the alleged constitutional violation." *Id.* (quoting *Gonzalez v. Reno,* 325 F.3d 1228, 1234 (11th Cir. 2003)). "'[F]acts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so'" suffice to demonstrate a causal connection. *Id.* (quoting *Gonzalez,* 325 F.3d at 1235).

The grab bag of adverbs and conclusory allegations set forth in Count VI do not present any facts evidencing Chief McCoy's personal participation in the Shooting or a causal connection between Chief McCoy's actions and the Shooting. As such, any purported § 1983 claim against Chief McCoy in his individual capacity is due to be dismissed.

### 2. Official Capacity Claim

As previously discussed, Plaintiff also intends to sue Chief McCoy in his official capacity. (Doc. 3 ¶ 14.)

> [W]hen an officer is sued under [§] 1983 in [his] official capacity, the suit is simply another way of pleading an action against an entity of which an officer is an agent. Such suits against municipal officers are, therefore, in actuality, suits directly against the city that the officer represents.

*Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991); *see also Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690 n.55 (1978). Accordingly, the Court construes Plaintiff's § 1983 official capacity claim against Officer McCoy as a claim against the City.

A municipality may be held liable under § 1983 only when the constitutional deprivation was undertaken pursuant to an official policy or custom; respondeat superior

11

is not an appropriate basis for suit. *St. Louis v. Praprotnik*, 485 U.S. 112, 121–22 (1988); *Pembaur v. Cincinnati*, 475 U.S. 469, 478–81 (1986); *Monell*, 436 U.S. at 690, 694. "[R]ecovery from a municipality is limited to acts that are, properly speaking, acts of the municipality—that is, acts which the municipality has officially sanctioned or ordered." *Pembaur*, 475 U.S. at 480.

The official policy or custom "must be the moving force of the constitutional violation in order to establish liability of a government body under § 1983."*Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981). A municipal act rising to the level of such a policy or custom can be established by alleging the existence of: (1) an express policy, (2) a widespread practice that is "so permanent and well settled as to constitute a custom and usage with the force of law"; or (3) "a single act or decision of a municipal official with final policymaking authority" in the relevant area. *Cuesta v. Sch. Bd. of Miami-Dade Cty.*, 285 F.3d 962, 966, 968 (11th Cir. 2002). A policy or custom has further been defined as tacit authorization, *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987), and a custom as "deeply imbedded traditional ways of carrying out policy," *Fundiller v. Cooper City*, 777 F.2d 1436, 1442 (11th Cir. 1985).

In addition, "[w]here a municipality's failure to train or supervise its employees in a relevant respect evidences a deliberate indifference to the rights of its inhabitants, such a shortcoming may constitute a policy or custom actionable under [§] 1983." *Shehada*, 965 F. Supp. 2d at 1373 (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). Such liability attaches where a municipality "inadequately trains or supervises its employees,

12

this failure to train or supervise is a city policy, and that city policy causes the employees to violate a citizen's constitutional rights." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (citing *City of Canton v. Harris*, 489 U.S. 378, 389–91 (1989)). To establish deliberate indifference, "a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Id.* at 1350.

Upon examination of the allegations in Count VI, the Court finds that Plaintiff has made wholly conclusory statements that the City "fail[ed] to promulgate reasonable policies and procedures among [its] officers for the use of force," and that such failure "was excessive and unreasonable, was done intentionally, willfully, [and] maliciously . . . , was done without lawful justification or reason, and was designed to and did cause specific serious physical emotional pain, physical pain, and death in violation of [Decedent's] rights under § 1983." (*See* Doc. 3 ¶ 70.) Plaintiff alleges no facts supporting his conclusion that the City had a policy or custom that was responsible for the death of Decedent, nor does she allege any facts demonstrating deliberate indifference.[10] As factual allegations, rather than conclusory statements of law, are required under the pleading standards articulated in *Iqbal* and *Twombly*, Plaintiff fails to raise this claim

---

[10] To cure this deficiency, Plaintiff points to the Negligent Hiring Claim in Count VIII, in which she alleges that Chief McCoy failed to adequately supervise, train, or discharge Officer Fowler when the need to do so was apparent (Doc. 3 ¶¶ 78–88). It appears that Plaintiff fails to appreciate the divergent pleading standards under § 1983 and state law for asserting liability against state actors. In any event, dismissal of all present claims against Chief McCoy is warranted.

13

above the speculative level. Hence the § 1983 claim for excessive force against the City is due to be dismissed.

### F. Remaining Defendants

As a final matter, the Court takes notice that only one Defendant—the City—has appeared in this action. Though the City endeavors to dismiss the claims against Chief McCoy, no counsel has appeared on his behalf. Consequently, the Court will require Plaintiffs to notify the Court regarding: (1) whether Chief McCoy and Officer Fowler have been served; and (2) how she intends to proceed against these Defendants.

### IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED**:

1. Defendant City of Altamonte Springs' Motion to Dismiss (Doc. 5) is **GRANTED IN PART AND DENIED IN PART**.

2. Count III (Doc. 3, ¶¶ 49–55) is **DISMISSED WITHOUT PREJUDICE**. If Plaintiff choses to replead this claim, she must affirmatively identify all potential beneficiaries in accordance with Florida's Wrongful Death Act.

3. Count V (Doc. 3, ¶¶ 62–68), Count VII, (*id.* ¶¶ 72–77), and Count VIII (*id.* ¶¶ 78–88) are **DISMISSED WITHOUT PREJUDICE**. If Plaintiff choses to replead these claims, she must plead them as alternative theories of liability for wrongful death.

4. Count VI (Doc. 3, ¶¶ 69–71) is **DISMISSED WITHOUT PREJUDICE**.

5. Plaintiff may file an amended complaint to address the deficiencies

identified in this Order on or before Friday, **April 21, 2017**. Failure to timely file an amended complaint may result in prejudicial dismissal of the counts discussed in this Order without further notice.

6. On or before Friday, **April 14, 2017**, Plaintiff is **DIRECTED** to notify the Court as to: (1) whether she has served Defendants Michael J. McCoy and Matthew Fowler; and (2) how she intends to proceed against these Defendants.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on April 6, 2017.



ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record